COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP

JOACHIM P. COX          7520-0
    jcox@cfhawaii.com
ABIGAIL M. HOLDEN        8793-0
    aholden@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawaiʻi  96813
Telephone:  (808) 585-9440
Facsimile:   (808) 275-3276

Attorneys for Petitioners
BRE HOTELS & RESORTS LLC,
BRE ICONIC GWR OWNER LLC,
and BRE TURTLE BAY RESORT LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| BRE HOTELS & RESORTS LLC, BRE ICONIC GWR OWNER LLC, and BRE TURTLE BAY RESORT LLC, | ) ) ) | Civil No. _____ |
| | ) | PETITION TO COMPEL |
| Petitioners, | ) ) | ARBITRATION; MEMORANDUM IN SUPPORT |
| | ) | OF PETITION |
| v. | ) ) | TO COMPEL ARBITRATION; DECLARATION OF |
| ACE AMERICAN INSURANCE | ) | PETITIONERS BRE HOTELS & |
| COMPANY, CERTAIN | ) | RESORTS LLC, BRE ICONIC |
| UNDERWRITERS AT LLOYD'S, | ) | GWR OWNER LLC, AND BRE |
| LONDON, including those subscribing to | ) | TURTLE BAY RESORT LLC; |
| Syndicate Nos. AMA 1200, 1919 CVS, | ) | EXHIBITS 1 – 7; SUMMONS |
| 318 CIN, 1967 WRB, 1729 DUW, 3268 | ) | |
| AGR, and 5151 ENH, CHUBB | ) | |
| EUROPEAN GROUP SE (a/k/a CHUBB | ) | |
| GLOBAL MARKETS – PROPERTY, | ) | |
| LIRMA A2302, A TRADING NAME OF | ) | |
| CHUBB EUROPEAN GROUP SE), | ) | |

COLONY INSURANCE COMPANY, )
CONTINENTAL CASUALTY )
COMPANY, ENDURANCE )
AMERICAN SPECIALITY )
INSURANCE COMPANY, )
ENDURANCE WORLDWIDE )
INSURANCE LTD., EVANSTON )
INSURANCE COMPANY, EVEREST )
INDEMNITY INSURANCE )
COMPANY, LANDMARK AMERICAN )
INSURANCE COMPANY, LEX )
LONDON, A DIVISION OF )
AMERICAN INTERNATIONAL )
GROUP UK LIMITED, LEXINGTON )
INSURANCE COMPANY, NATIONAL )
FIRE AND MARINE INSURANCE )
COMPANY, STARR SURPLUS LINES )
INSURANCE COMPANY, )
WESTCHESTER SURPLUS LINES )
INSURANCE COMPANY, and )
WESTPORT INSURANCE )
CORPORATION )
)
               Respondents.

## **PETITION TO COMPEL ARBITRATION**

1.     Petitioners BRE Hotels & Resorts LLC, BRE Iconic GWR Owner

LLC, and BRE Turtle Bay Resort LLC (collectively, "BRE") hereby apply to the

Court for an order compelling Respondent Insurers to submit to arbitration

regarding the amount of loss incurred by BRE in connection with damage to two

resorts in Hawai'i owned by BRE: the Grand Wailea Resort and the Turtle Bay

Resort.  The relevant insurance policies contain a provision mandating arbitration

(called in the policies "appraisal") if the parties cannot agree as to the amount of

the insured loss. Although the damage to the resorts took place more than three years ago, and despite BRE's best efforts, the parties have been unable to reach agreement on the amount of the insurance claim for that damage. As a result, BRE demanded arbitration, a demand the Respondent Insurers "reject[ed]." BRE now asks the Court to order Respondent Insurers to comply with the appraisal clause of the insurance policies by selecting their competent and disinterested party appraiser, cooperating with BRE in good faith to select a competent and disinterested umpire, and proceeding to an appraisal of BRE's loss.

2.      This Petition is filed pursuant to Sections 4 and 206 of the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 4, 206.[1]

## Parties

3.      Petitioner BRE Hotels & Resorts LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Chicago, Illinois.

---

[1] As this filing is a petition initiating a proceeding pursuant to the Federal Arbitration Act and the Convention and not a motion (*e.g.*, to stay and compel arbitration as to an existing proceeding), it is Petitioners' understanding that Hawai'i District Court Rules, Local Rule 7.8, which relates to a meet-and-confer requirement prior to the filing of certain motions, is inapplicable here.

4.     BRE Iconic GWR Owner LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Chicago, Illinois.

5.     BRE Turtle Bay Resort LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Chicago, Illinois.

6.     ACE American Insurance Company ("ACE") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. ACE is licensed to transact insurance business in Hawaiʻi and at times relevant to this Petition was engaged in the business of selling contracts of insurance covering property located in Hawaiʻi, including BRE's resorts, and transacted substantial business in Hawaiʻi.

7.     Respondents Certain Underwriters at Lloyd's, London (collectively, the "London Market Respondents") comprise all members of certain underwriting syndicates that have underwritten or subscribed to Policy Nos. B080120020U20, B080120027U20, and 20CVSSPLP301901, insuring BRE.  The London Market Respondents are each named in their individual capacities.  The so-called "lead" or "active" underwriters of the policies in question are also named in their representative capacity.  The London Market Respondents include but are not limited to individual members of Lloyd's underwriting syndicates AMA 1200, 1919 CVS, 318 CIN, 1967 WRB, 1729 DUW, 3268 AGR, and 5151 ENH.  The

London Market Respondents are or at all relevant times were doing substantial business in Hawai'i, and insured the properties, assets, and other risks of BRE. The London Market Respondents have contractually consented to the jurisdiction of the Hawai'i courts in this action.

8. Upon information and belief, Chubb European Group SE ("CEG") (a/k/a Chubb Global Markets – Property, LIRMA A2302, a trading name of Chubb European Group SE) is a public company organized under the law of the European Union with a principal place of business in Paris, France. At times relevant to this Petition, CEG was engaged in the business of selling contracts of insurance covering property located in Hawai'i, including BRE's resorts, and transacted substantial business in Hawai'i. CEG has contractually consented to the jurisdiction of the Hawai'i courts in this action.

9. Colony Insurance Company ("Colony") is a Virginia corporation with its principal place of business in Chicago, Illinois. At times relevant to this Petition, Colony was engaged in the business of selling contracts of insurance covering property located in Hawai'i, including BRE's resorts, and transacted substantial business in Hawai'i.

10. Continental Casualty Company ("Continental") is an Illinois corporation with its principal place of business in Chicago, Illinois. Continental is licensed to transact insurance business in Hawai'i and at times relevant to this

Petition was engaged in the business of selling contracts of insurance covering property located in Hawaiʻi, including BRE's resorts, and transacted substantial business in Hawaiʻi.

11.     Endurance American Specialty Insurance Company ("Endurance American") is a Delaware corporation with its principal place of business in Purchase, New York.  At times relevant to this Petition, Endurance American was engaged in the business of selling contracts of insurance covering property located in Hawaiʻi, including BRE's resorts, and transacted substantial business in Hawaiʻi.  Endurance American has contractually consented to the jurisdiction of the Hawaiʻi courts in this action.

12.     Upon information and belief, Endurance Worldwide Insurance Limited ("Endurance Worldwide") is a private limited company organized under the laws of the United Kingdom and with a principal place of business in London, England.  At times relevant to this Petition, Endurance Worldwide was engaged in the business of selling contracts of insurance covering property located in Hawaiʻi, including BRE's resorts, and transacted substantial business in Hawaiʻi. Endurance Worldwide has contractually consented to the jurisdiction of the Hawaiʻi courts in this action.

13.     Evanston Insurance Company ("Evanston") is an Illinois corporation with its principal place of business in Glen Allen, Virginia.  Evanston is licensed to

transact insurance business in Hawaiʻi and at times relevant to this Petition was engaged in the business of selling contracts of insurance covering property located in Hawaiʻi, including BRE's resorts, and transacted substantial business in Hawaiʻi. Evanston has contractually consented to the jurisdiction of the Hawaiʻi courts in this action.

14. Everest Indemnity Insurance Company ("Everest") is a Delaware corporation with its principal place of business in Warren, New Jersey. At times relevant to this Petition, Everest was engaged in the business of selling contracts of insurance covering property located in Hawaiʻi, including BRE's resorts, and transacted substantial business in Hawaiʻi. Everest has contractually consented to the jurisdiction of the Hawaiʻi courts in this action.

15. Landmark American Insurance Company ("Landmark") is a New Hampshire corporation with its principal place of business in Atlanta, Georgia. At times relevant to this Petition, Landmark was engaged in the business of selling contracts of insurance covering property located in Hawaiʻi, including BRE's resorts, and transacted substantial business in Hawaiʻi.

16. Upon information and belief, Lex London is a division of American International Group UK Limited ("AIG UK"), which is a private limited company organized under the laws of the United Kingdom with its principal place of business in London, England. At times relevant to this Petition, AIG UK was

engaged in the business of selling contracts of insurance covering property located in Hawai'i, including BRE's resorts, and transacted substantial business in Hawai'i.  AIG UK has contractually consented to the jurisdiction of the Hawai'i courts in this action.

17.    Lexington Insurance Company ("Lexington") is a Delaware corporation with its principal place of business in Boston, Massachusetts.  At times relevant to this Petition, Lexington was engaged in the business of selling contracts of insurance covering property located in Hawai'i, including BRE's resorts, and transacted substantial business in Hawai'i.  Lexington has contractually consented to the jurisdiction of the Hawai'i courts in this action.

18.    National Fire and Marine Insurance Company ("National Fire & Marine") is a Nebraska corporation with its principal place of business in Omaha, Nebraska.  At times relevant to this Petition, National Fire & Marine was engaged in the business of selling contracts of insurance covering property located in Hawai'i, including BRE's resorts, and transacted substantial business in Hawai'i.

19.    Starr Surplus Lines Insurance Company ("Starr") is a Texas corporation with its principal place of Business in New York, New York.  Starr is licensed to transact insurance business in Hawai'i and at times relevant to this Petition, Starr was engaged in the business of selling contracts of insurance covering property located in Hawai'i, including BRE's resorts, and transacted

substantial business in Hawai'i.  Starr has contractually consented to the jurisdiction of the Hawai'i courts in this action.

20.     Westchester Surplus Lines Insurance Company ("Westchester") is a Georgia corporation with its principal place of business in Roswell, Georgia.  At times relevant to this Petition, Westchester was engaged in the business of selling contracts of insurance covering property located in Hawai'i, including BRE's resorts, and transacted substantial business in Hawai'i.

21.     Westport Insurance Corporation ("Westport") is a Missouri corporation with its principal place of business in Kansas City, Missouri.  Westport is licensed to transact insurance business in Hawai'i and at times relevant to this Petition was engaged in the business of selling contracts of insurance covering property located in Hawai'i, including BRE's resorts, and transacted substantial business in Hawai'i.

### Jurisdiction and Venue

22.     Federal question jurisdiction exists in this Court pursuant to the Federal Arbitration Act, the Convention, and 28 U.S.C. § 1331.  To the extent necessary, supplemental jurisdiction also exists under 28 U.S.C. § 1367.

23.     Personal jurisdiction exists, and venue is proper pursuant to 28 U.S.C. § 1391(a), (b), and (c), because, within the time period relevant herein, Respondents have been licensed to transact insurance business in Hawai'i, have in

fact transacted business in Hawaiʻi, and/or have insured substantial properties and risks, including the Grand Wailea Resort (on Maui) and the Turtle Bay Resort (on Oahu), through policies sold to BRE. In addition, several Respondents have contractually consented to the jurisdiction of Hawaiʻi courts.

### Facts

24. On March 9, 2021 a major rainstorm (the "March 9 Storm") swept across the Grand Wailea and Turtle Bay Resorts, resorts owned by BRE with a publicly disclosed value of more than $750 million.

25. BRE is insured by the insurance policies listed in Exhibit 1 ("the Policies") sold by Respondents. All applicable conditions precedent to coverage under the Policy have been complied with, met, or waived.

26. A dispute has arisen and persists regarding the amount of loss incurred by BRE for property damage, business interruption, and other categories of loss as a result of the March 9 Storm. Said otherwise, the parties disagree as to the proper amount of BRE's insurance claim.

27. Pursuant to the Policies, each Respondent Insurer promised to cover a certain portion of BRE's losses, excess of a deductible, resulting from any damage to BRE's resorts occurring during the policy period, March 15, 2020, to March 15, 2021.

28.     Each Respondent Insurer agreed to common contract wording.  An example of an insurance policy containing this common contract wording is attached hereto as Exhibit 2.

29.     The common contract wording includes an appraisal provision (the "Appraisal Clause") that provides for arbitration in the event the parties disagree about the amount of BRE's insurance claim.  That reads as follows:

> If the Insured and the Insurer fail to agree on the amount of a claim, each, upon the written demand of the other made within 60 days after receipt of proof of loss by the Insurer shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of the Insurer, such umpire shall be selected by a judge of a court of record in the appropriate jurisdiction in which such appraisal is pending. . . . An award in writing by any two shall determine the amount of loss.

30.     BRE estimates its storm-related losses to exceed $55 million.  More than three years have passed since the March 9 Storm, and BRE's Insurers have paid less than $14 million to BRE, leaving more than $41 million of BRE's losses unpaid and in dispute.

31.     Specifically, BRE has asserted that costs to repair a damaged tile system at the Grand Wailea Resort are approximately $8.3 million; Respondent Insurers contend that repairs should have cost $1.2 million.  BRE contends that it incurred approximately $30 million in business interruption losses while repairs were being completed; Respondent Insurers contend those losses amounted to $1

11

million.  BRE contends that cost of replacing furniture, fixtures and equipment at the Turtle Bay Resort was approximately $6.2 million; Respondent Insurers contend that those losses amounted to $2.2 million.  In total, the parties' measurements of amount of BRE's insurance claim differ by approximately $41.6 million as shown in the chart below:

**Grand Wailea Resort + Turtle Bay Resort**
**March 9, 2021 Rainstorm Claim**

**Difference:  $41.6 million**

**Grand Wailea Resort**

|                          | **BRE**  | **Insurers** | **Difference** |
| ------------------------ | -------- | ------------ | -------------- |
| Business Interruption    | $29.6M   | $1M          | $28.6M         |
| Tile System Replacement  | $8.3M    | $1.2M        | $7.1M          |
| Ancillary Issues[1]      | $800K    | $0           | $800K          |
| **Subtotal**             | $38.7M   | $2.2M        | $36.5M         |

**Turtle Bay Resort**

|                      | **BRE** | **Insurers** | **Difference** |
| -------------------- | ------- | ------------ | -------------- |
| FF&E                 | $6.2M   | $2.2M        | $4M            |
| Ancillary Issues[2]  | $1.1M   | $0           | $1.1M          |
| **Subtotal**         | $7.3M   | $2.2M        | $5.1M          |
| **Claim Total**      | $46M    | $4.4M        | **$41.6M**     |

[1] Includes professional fees, forensic consulting services, temporary reconstruction, contents, and project management.
[2] Includes temporary reconstruction, professional fees, emergency services, forensic consulting services, reconstruction, and project management.

32.     Respondent Insurers initially took certain steps to adjust BRE's claim, but subsequently terminated that process.  On February 21, 2023, BRE

representatives and consultants met with Crawford Global Technical Services ("Crawford"), Respondent Insurers' adjuster and agent. At that meeting, a Crawford employee informed the group that Respondent Insurers had not authorized Crawford to proceed with further adjustment of BRE's claim.

33. On December 13, 2023, one of Respondent Insurers' representatives left a voicemail for BRE stating that BRE and the Insurers were "so far apart" on the amount of the insurance claim.

34. To date Respondent Insurers have refused to pay the remainder of the claim based on their (incorrect and unsupported) views that: (1) the repairs at the Grand Wailea were unnecessarily extensive; (2) the Grand Wailea repairs took too long; (3) BRE could have obtained matching replacement tile; and (4) furniture, fixtures and equipment at the Turtle Bay Resort did not need to be replaced. As these issues pertain to "amount of a claim," the parties plainly have failed to agree on said amount.

35. To date, Respondent Insurers have not asserted that BRE's claim is not covered. While the Respondent Insurers contend that BRE's use of certain floor tile raises a coverage issue, in fact the only dispute on that point is whether or not matching floor tile was available. Said otherwise, that issue pertains to the proper repairs, not to issues of contract interpretation and application.

36.     In view of the failure of the parties to agree on the amount of the claim, BRE sent Respondents a Proof of Loss, dated December 20, 2023, and in the same communication demanded an "appraisal," *i.e.*, the term used by the common wording of the Policy for arbitration of disputes related to the amount of BRE's insurance claim.

37.     BRE designated its party "appraiser" (*i.e.*, its party arbitrator) by letter dated February 16, 2024.

38.     Insurers "reject[ed]" BRE's demand for "appraisal," (the Policy term for arbitration of disputes related to the amount of the policyholder's losses) by letter dated February 19, 2024.  Said otherwise, the Respondent Insurers have refused to comply with BRE's demand for arbitration as required by the Appraisal Clause of the insurance contracts they sold to BRE.

### Count One (Compel Arbitration under the Federal Arbitration Act)

39.     Petitioners repeat and reallege paragraphs 1 through **Error! Reference source not found.** hereof, as if fully set forth within.

40.     Respondent Insurers ACE, Colony, Continental, Endurance American, Evanston, Everest, Landmark, Lexington, National Fire & Marine, Starr, Westchester, and Westport (the "Domestic Insurers"), insurance companies formed under the laws of Delaware, Georgia, Illinois, Missouri, Nebraska, New Hampshire, Pennsylvania, Texas, and Virginia, with principal places of business in

Georgia, Illinois, Massachusetts, Missouri, Nebraska, New Jersey, New York, Pennsylvania, and Virginia, sold to the BRE entities, which were formed under the laws of Delaware with principal places of business in Illinois, insurance policies— contracts of insurance—to insure BRE resorts located in Hawai'i.

41.     The insurance policies sold to BRE by the Domestic Insurers contain a valid agreement to arbitrate: the Appraisal Clause, a provision contained in the common policy language to which all Respondent Insurers agreed.  That provision mandates arbitration ("appraisal") upon the request of a party if the parties cannot agree as to the amount of the insured loss.

42.     The parties' disagreement about the amount of the loss in BRE's claim falls within the scope of the Appraisal Clause.

43.     Domestic Insurers have "reject[ed]" BRE's demand for appraisal.

44.     Domestic Insurers should be compelled to submit to arbitration as set forth in the Prayer for relief below.

### Count Two (Compel Arbitration under the Convention and the Federal Arbitration Act)

45.     Petitioners repeat and reallege paragraphs 1 through **Error! Reference source not found.** hereof, as if fully set forth within.

46.     Respondent Insurers London Market Respondents, CEG, Endurance Worldwide, and AIG UK (the "Foreign Insurers") sold to the BRE entities

insurance policies—contracts of insurance—to insure BRE resorts located in Hawaiʻi.

47.　Foreign Insurers' policies contain a valid agreement in writing to arbitrate within the meaning of the Convention: the Appraisal Clause, a provision contained in the common policy language to which all Respondent Insurers agreed. That provision mandates arbitration ("appraisal") upon the request of a party if the parties cannot agree as to the amount of the insured loss.

48.　Foreign Insurers' policies provide for arbitration in the United States, a signatory of the Convention, as shown by the terms and conditions of the insurance policies, including service of suit clauses by which Foreign Insurers expressly agreed to submit to the jurisdiction of United States courts.

49.　The insurance policies sold to BRE by the Foreign Insurers arise out of a commercial legal relationship in which BRE paid premiums to Foreign Insurers in return for their contractual guarantee to insure, among other things, two resorts, the publicly disclosed value of which is in excess of $750 million.

50.　Foreign Insurers CEG, Endurance Worldwide, and AIG UK are not American citizens within the meaning of the Convention, as they are domiciled in the United Kingdom or in France.　Upon information and belief, one or more members of each syndicate comprising the London Market Respondents are not American citizens.

51.     Foreign Insurers have "reject[ed]" BRE's demand for appraisal.

52.     Foreign Insurers should be compelled to submit to arbitration as set forth in the Prayer for relief below.

## PRAYER FOR RELIEF

Petitioners respectfully petition this Court for an Order:

1.     On Count One, directing Domestic Insurers to comply with the appraisal clause of the insurance policies by selecting their competent and disinterested party appraiser, cooperating with BRE in good faith to select a competent and disinterested umpire, and proceeding to an appraisal of BRE's loss pursuant to the appraisal provision of the common contract wording in the insurance policies;

2.     On Count Two, directing Foreign Insurers to comply with the appraisal clause of the insurance policies by selecting their competent and disinterested party appraiser, cooperating with BRE in good faith to select a competent and disinterested umpire, and proceeding to an appraisal of BRE's loss pursuant to the appraisal provision of the common contract wording in the insurance policies;

3.     Retaining jurisdiction over this petition in the event the two party appraisers cannot reach agreement regarding a competent and disinterested umpire; and

4. Granting such other relief as this Court may deem just and proper.

DATED:  Honolulu, Hawaiʻi, April 5, 2024.

*/s/ Joachim P. Cox*
JOACHIM P. COX
ABIGAIL M. HOLDEN

Attorneys for Petitioners
BRE HOTELS & RESORTS LLC,
BRE ICONIC GWR OWNER LLC,
and BRE TURTLE BAY RESORT LLC