IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| BRE HOTELS & RESORTS LLC, *et al.*,<br><br>Petitioners,<br><br>vs.<br><br>ACE AMERICAN INSURANCE COMPANY, *et al.*,<br><br>Respondents. | Civil No. 24-00159 MWJS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION TO ENFORCE ORDER COMPELLING ARBITRATION AND FOR SANCTIONS |

**INTRODUCTION**

Petitioner BRE—short for BRE Hotels & Resorts LLC, BRE Iconic GWR Owners LLC, and BRE Turtle Bay Resort LLC—is the owner of two resort properties that were damaged in a rainstorm. Its insurers—Respondents here—paid out a portion of BRE's claimed losses, but disputed others. To resolve the disputed amounts, BRE demanded that Insurers abide by their contractual commitment to submit to a form of arbitration called appraisal. Insurers refused, and BRE filed a petition to compel arbitration.

In September 2024, this Court granted BRE's petition and ordered Insurers to submit to appraisal. But over five months later, Insurers have yet to do so. Instead, in a separate lawsuit in New York state court, Insurers filed a motion asking the state court to stay the appraisal that this Court had ordered. In the meantime, Insurers slow-walked BRE's requests to proceed with the procedural steps required to begin

appraisal, including appointing an appraiser and agreeing to an appraisal protocol.

Against this backdrop, BRE filed the motion now before this Court, seeking to enforce

the Court's order compelling appraisal. BRE also seeks sanctions.

The Court agrees with BRE that Insurers have violated this Court's order

compelling arbitration. That order was not advisory. It did not merely encourage

Insurers to submit to an appraisal when they deemed it convenient. It ordered them to

do so. And in so ordering, it required Insurers to promptly comply in good faith. But

Insurers have not fulfilled their responsibilities. While they are free to litigate

unresolved matters elsewhere, Insurers may not disregard this Court's rulings. Nor

will litigation in New York state court—regardless of what that court decides to do—

relieve them of their obligations under this Court's order.

The Court therefore ORDERS Insurers to comply with the Court's September

2024 order compelling arbitration promptly and in good faith. To ensure prompt

compliance, the Court sets deadlines for the next steps of appraisal, which the parties

agreed to abide by at the hearing on this motion. At this stage, the Court declines to

take the further step of imposing sanctions. But this order should serve as both a

clarification and a warning to Insurers: If they do not now submit to appraisal and BRE

is forced to move for similar relief in the future, sanctions will follow. On these

understandings, the Court GRANTS IN PART AND DENIES IN PART BRE's motion.

## BACKGROUND

**A.      Factual Background of this Suit**

The Court's September 2024 order described the factual background of this case in detail.  *See* ECF No. 47.  The Court assumes the reader's familiarity with those facts and repeats them only as necessary to dispose of the present motion.

In 2021, a storm hit two of BRE's Hawaiʻi resorts, the Grand Wailea Resort on Maui and the Turtle Bay Resort on Oʻahu.  ECF No. 1, at PageID.10 (Pet. ¶ 24).  BRE sought reimbursement from Insurers, who are the sixteen Respondents in this case.  In relevant part, BRE sought $46 million in four categories:  business interruption losses at the Grand Wailea; damaged tiles at the Grand Wailea; furniture, fixtures, and equipment at Turtle Bay; and an assortment of ancillary losses at both properties.  *Id.* at PageID.11-12 (¶ 31).  While Insurers paid out part of BRE's claim, they took the position that many of the claimed losses were inflated—they contended, for example, that most of the tiles suffered from an independent defect not caused by the storm, that the insurance policies did not cover the replacement of undamaged furniture, and that the claimed business interruption losses were too high.  *See id.*

Because BRE believed the insurance policies entitled it to over $40 million more, in December 2023, BRE demanded appraisal to resolve the parties' disagreements over the amount of loss.  *Id.* at PageID.14 (¶ 36).  Insurers rejected the demand.  *Id.* (¶ 38).  BRE then filed this suit in April 2024, initiated by a petition to compel arbitration under

the Federal Arbitration Act and the Convention on the Recognition and Enforcement of

Foreign Arbitral Awards.  ECF No. 1.  Insurers moved to dismiss the petition on *forum*

*non conveniens* grounds based on what they contended was a New York state court

forum selection clause.  ECF No. 24.  They also contended that BRE had not fully

complied with the terms of the insurance policies—including the policies' cooperation

clauses—and therefore were not entitled to demand appraisal.

> **B.    This Court's September 11, 2024, Order Compelling Arbitration**

In an order dated September 11, 2024, this Court denied Insurers' motion to

dismiss and granted BRE's petition.  ECF No. 47.  As to the motion to dismiss, the Court

determined that the relevant policies contained contradictory forum selection clauses,

and that the Court would not reform the error in the policies because Insurers expressly

disavowed reformation based on mutual mistake.  *Id.* at PageID.953-61.  The Court also

rejected Insurers' argument that BRE had failed to comply with the insurance policies.

*Id.* at PageID.962-66.

As to BRE's petition, the Court ruled that each of the four categories of disputed

losses were subject to appraisal—that is, each of the issues presented were

fundamentally factual questions to be determined by an appraiser, not legal questions

to be resolved in court.  *Id.* at PageID.966-74.  The Court also specifically held that the

causation question for the damage to the tiles—that is, whether the damage to the tiles

was caused by the storm—was a factual issue that must be submitted to appraisal.  *Id.* at

PageID.970-73.  The Court identified only one issue that fell outside the scope of appraisal:  Insurers' contention that "the policies do not cover replacing tiles for aesthetic purposes."  *Id.* at PageID.973.  That dispute, the Court recognized, presented a coverage—or legal—issue.  *Id.*  The Court also more broadly acknowledged it was "conceivable" that appraisal would "not resolve all of the issues" in the four disputed categories of losses.  *Id.* at PageID.973-74.  Coverage issues might conceivably later arise if, for example, appraisers conclude that the tiles were not damaged by the storm.  *Id.*  But the Court made clear that appraisal nonetheless should go forward now, with legal issues to be resolved by a court at a later time.  *Id.* at PageID.974 ("[F]or now, BRE's claim raises factual questions that may be resolved by the appraisal process.").

At the same time, the Court recognized that Insurers might wish to seek the prompt resolution of legal issues if any were to arise during appraisal.  For that reason, the Court offered to retain jurisdiction to provide Insurers with a ready forum for any legal issues that required resolution before appraisal was complete.  *Id.*  Insurers, however, declined to take the Court up on that offer.  *See* ECF Nos. 48, 57.

And so as of September 11, 2024, Insurers were obligated by this Court's order to submit to appraisal promptly and in good faith.

**C.    Insurers' New York State Court Action and BRE's Motion to Enforce this Court's September 11, 2024, Order Compelling Arbitration**

On August 28, 2024—the day of this Court's hearing on the petition to compel—Insurers separately filed an action in New York state court.  *ACE Am. Ins. Co. v. BRE*

*Hotels & Resorts LLC*, Civil No. 654460/2024 (N.Y Sup. Ct. 2024).  In that action, Insurers

sought relief they had disavowed in this Court:  reformation of the policies to select

New York state court as the proper forum.  *See* Complaint, *ACE Am. Ins. Co.*, Civil No.

654460/2024 (Aug. 28, 2024), NYSCEF No. 2; ECF No. 65-5, at PageID.1299-300.  The

New York suit also contains other claims for relief that undermine—or even directly

contradict—this Court's order compelling arbitration:  it seeks a judgment declaring

(1) that existing coverage disputes preclude appraisal (despite this Court's ruling that

they do not), (2) that BRE is not entitled to coverage for its business interruption losses

(despite this Court's ruling that such losses are subject to appraisal), and (3) that BRE

breached various conditions precedent (despite this Court's ruling that it had not).  *See*

Complaint, *supra*; ECF No. 65-5, at PageID.1300-06.

Granted, the state court lawsuit was filed before this Court issued its September

11, 2024, order.  But Insurers did not conform their conduct to this Court's order after it

was issued.  They have continued, even after September 11, 2024, to press claims in

New York state court that are incompatible with this Court's order.  And, most

glaringly, on November 6, 2024, Insurers filed a motion in the New York state court

seeking to *stay* appraisal—the very appraisal which this Court had already ordered to

proceed.  ECF No. 60-1, at PageID.1103 (citing Motion to Stay Appraisal, *ACE Am. Ins.

Co.*, Civil No. 654460/2024 (Nov. 6, 2024), NYSCEF No. 22); *see also* ECF No. 64-3.

In response, BRE moved in New York state court to dismiss the state case on the bases of res judicata and collateral estoppel or, in the alternative, to stay the New York action—rather than the appraisal this Court had already ordered—until the conclusion of appraisal.  ECF No. 60-1, at PageID.1103 (citing Motion to Dismiss, *ACE Am. Ins. Co.*, Civil No. 654460/2024 (Nov. 14, 2024), NYSCEF No. 29).  These motions remain pending in New York state court.

Meanwhile, BRE sought to proceed with the steps necessary to begin appraisal pursuant to this Court's September 11, 2024, order compelling arbitration.  BRE reports that it had designated an appraiser as early as February 2024, and it reiterated that choice to Insurers on September 13, 2024.  *Id.* at PageID.1104; *see also* ECF No. 60-6.  BRE then followed up to request that Insurers designate their own appraiser on September 19 and 27, 2024, and again on October 17, 2024.  ECF No. 60-1, at PageID.1104; *see also* ECF Nos. 60-5 to -6.  On October 18, 2024, Insurers informed BRE that they "intend[ed] to designate" a specified individual (Timothy Wood) as their appraiser.  ECF No. 60-7, at PageID.1143.  And the parties passed back and forth proposed appraisal protocols in the following weeks.  *See* ECF Nos. 65-2 to -4.  Parts of Insurers' proposed protocol, however, sought to exclude from appraisal issues that this Court had already found to be arbitrable—for example, the origin of the damage to the tiles and the amount of BRE's business interruption losses.  ECF No. 65, at PageID.1251-52; *see also* ECF No. 65-3, at PageID.1271-72.  And rather than take the next steps toward

appraisal, Insurers filed their motion to stay the appraisal in New York state court on November 6, 2024, as noted above.

Following the filing of Insurers' motion to stay, on November 15, 2024, BRE reminded Insurers that they "are required by the Hawaiʻi Court's September 11 Order to proceed with appraisal" and requested that Insurers "promptly confirm" that they would do so. ECF No. 60-8, at PageID.1148. Insurers declined. Instead, in a letter dated November 20, 2024, they notified BRE that they would "not agree to go forward with the appraisal until our Motion to Stay Appraisal has been ruled upon [by the New York court] in light of, among other things, the open coverage issues that must be resolved prior to appraisal." ECF No. 60-3, at PageID.1120.

Given Insurers' position, BRE filed the present motion to enforce the Court's order compelling arbitration and for sanctions on December 18, 2024. ECF No. 60. BRE contends that Insurers are intentionally and flagrantly violating this Court's order by refusing to proceed with arbitration and by instead allegedly seeking to relitigate the matter in New York state court. *Id.* As relief, BRE seeks a new order compelling Insurers to proceed with appraisal promptly and in good faith. *Id.* at PageID.1091. To ensure compliance, BRE requests the Court's oversight via specific deadlines for finalizing an appraisal protocol and selecting an umpire. ECF No. 65, at PageID.1259. BRE also seeks sanctions in the form of attorneys' fees incurred in bringing this motion. ECF No. 60, at PageID.1091. In their opposition, Insurers deny that their New York

action seeks to relitigate this one and maintain that they have complied with this Court's order compelling arbitration.  ECF No. 64.

The Court held a hearing on BRE's motion on February 27, 2025.  ECF No. 67.

### DISCUSSION

A.    **Insurers' Refusal to Proceed with Appraisal Violates this Court's Order Compelling Arbitration**

The first and foremost question presented is whether Insurers are in compliance with this Court's September 11, 2024, order compelling arbitration.  They are not.

Indeed, Insurers have been remarkably candid in their refusal to comply with the Court's order.  Their letter to BRE unequivocally stated that they "will not agree to go forward with the appraisal" until their motion to stay the appraisal has been ruled on by the New York state court.  ECF No. 60-3, at PageID.1120.  And they said this is "in light of, among other things, the open coverage issues that must be resolved prior to appraisal."  *Id.*  They repeat that contention in their briefing to this Court, claiming there is a "need to resolve coverage disputes *prior to* proceeding to appraisal."  ECF No. 64, at PageID.1185 (emphasis added).

Insurers' position is irreconcilable with this Court's September 11, 2024 order.  In that order, this Court already considered, and rejected, Insurers' arguments that there were outstanding legal issues of coverage that must be resolved before appraisal can proceed.  ECF No. 47, at PageID.966-74.  The Court held that the issues presented were fundamentally factual and thus subject to appraisal—and it held that any legal issues

that might arise during the appraisal process were not a reason to hold off on an appraisal. *Id.* That is the very reason why the Court saw fit to compel Insurers to submit to an appraisal. The Court would not have compelled Insurers to submit to an appraisal if was not yet appropriate to conduct one. Insurers' refusal to proceed with appraisal promptly and in good faith therefore directly contravenes this Court's September 11, 2024, order.

On this point, the parties air various arguments addressing collateral estoppel, res judicata, the Supremacy Clause, and comity. The Court need not take up those issues to reach its result here. Those matters have been presented to the New York state court for resolution, and that court will assess them in disposing of the parties' pending motions there. It is enough to say that no order in New York state court—whatever that court decides—will relieve Insurers of their duty to comply with this Court's September 11, 2024, order compelling arbitration. Insurers' only routes for such relief lie in federal court—and they have not sought a stay, reconsideration, or any other relief in federal court. *See United Food & Com. Workers Union, Loc. 135 v. Ralphs Grocery Co.*, No. CV 19-4265, 2020 WL 1230639, at *4 (C.D. Cal. Feb. 14, 2020) ("Absent a stay, all orders and judgments of courts must be complied with promptly." (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983))).

Insurers separately contend that they are complying with the September 11, 2024, order because they have appointed an appraiser and exchanged proposed protocols

with BRE.  The Court accepts Insurers' representation that they have now appointed

Woods as an appraiser.  *See* ECF No. 64-4.  But that alone does not constitute

compliance.  That is especially clear because Insurers represented that although they

have "no objection to working toward" making some preparations for appraisal to be

"utilized when appropriate"—such as agreeing on an appraisal protocol—they would

nonetheless "not agree to go forward with the appraisal" until resolution of the motion

to stay in New York.  ECF No. 60-3, at PageID.1120.  And while Insurers also passed

back and forth proposed appraisal protocols with BRE, BRE has produced evidence that

even Insurers' proposed protocol disregarded the clear terms of this Court's September

11, 2024, order:  Insurers' proposed protocol would have, for example, directed issues

that this Court determined were factual to not be submitted to appraisal, including the

cause of the tile damage and the amount of BRE's business interruption losses.  ECF No.

65-3, at PageID.1272 (Insurers' Redlined Edits to BRE's Proposed Protocol) (defining the

scope of appraisal as "[t]he per unit replacement cost value and actual cash value of the

damaged . . . tile *not including* any additional undamaged tile whether due to alleged

waterproofing issues or alleged 'matching' tile deficiencies or any alleged resulting

business interruption claims" (emphasis added)).  By seeking to exclude certain matters

from appraisal that this Court had already ruled must be submitted to appraisal,

Insurers have failed to comply with this Court's September 11, 2024, order.

Seeking to defend their conduct, Insurers first contend that this Court

"acknowledged that it could not determine Insurers' business interruption coverage

issues . . . because . . . the Court lacked sufficient details about those arguments to

determine if those coverage issues existed."  ECF No. 64, at PageID.1180-81.  That is not

a persuasive defense, and it does not fairly characterize the procedural history of this

case.  The question previously before the Court was whether Insurers should be

compelled to submit the business interruption claim—and, indeed, any of the other

categories of disputed loss—to appraisal.  Insurers had a full and fair opportunity to

explain why the disputes implicated coverage issues rather than factual ones.  And

Insurers failed to adequately develop the argument that there was any significant legal

issue at stake that had to be resolved before an appraisal could be conveniently

conducted.  For that reason, the Court ruled that the business interruption claim was

fundamentally a factual one that must be submitted to appraisal.  *See, e.g.*, ECF No. 47,

at PageID.968 n.8 (deeming "waived" any argument that "BRE did not follow the

policy's methodology and that BRE improperly included lost revenue from undamaged

hotel rooms" because "[t]hose arguments appear nowhere in [Insurers'] briefs" and were first raised at the hearing).

Insurers cannot now complain that if they had been more effective or precise in their briefing—if they had not, for example, waived some of their more particularized arguments about business interruption losses—the Court might have reached a different result.  A party cannot evade the force of a court order through the simple expedient of claiming that they failed to make their best arguments; an order carries no less force when it is entered because an argument has been waived than when it is entered because an argument has been found to be meritless.  Even if Insurers now believe they could make a more persuasive argument about the nature of the disputed losses, they are bound by this Court's ruling that the business interruption claims—indeed, all four categories of disputed losses, including causation—are fundamentally factual and thus subject to appraisal.[1]

As a separate tack, Insurers argue that this Court declined jurisdiction to resolve coverage issues, and so they have properly sought the resolution of these issues in New York state court before the appraisal process can begin.  ECF No. 64, at PageID.1174.  This argument again ignores the fact that this Court specifically considered the four

---

[1]    For similar reasons, Insurers cannot evade their obligation to submit to appraisal by noting that they are now making fuller arguments about contract reformation and BRE's alleged failure to meet the policies' cooperation clauses in New York state court. This Court has already ruled that those matters do not preclude appraisal—which is exactly why this Court compelled Insurers to submit to appraisal in the first place.

categories of disputed losses and concluded that they were fundamentally factual

disputes that must be submitted to appraisal.  By seeking to exclude from appraisal

matters that this Court has already ordered must be submitted to it—and by arguing to

the New York state court that some of those very matters are not subject to appraisal,

despite this Court's ruling that they are—Insurers have failed to comply with the

Court's order.  And by claiming to need the resolution of coverage issues in New York

state court *before* the appraisal process can go forward, Insurers have disregarded the

fact that this Court has already ruled that the parties are required to submit to appraisal

*now*—not when they decide it is convenient for them to do so.  That is to say, the Court

has already considered Insurers' argument that there are outstanding coverage issues

that must be resolved before appraisal—and has squarely rejected that argument.

Insurers' position is especially troubling because this Court offered to retain

jurisdiction precisely so that, if legal issues were to arise during the appraisal process,

Insurers would have a ready forum for the prompt resolution of any such legal issues.

After all, under this Court's September 11, 2024, order, Insurers are required to submit

to appraisal promptly and in good faith.  This means that unless they obtain relief from

this Court, they must go forward with the appraisal this Court has ordered—regardless

of what the New York state court says or does.  Insurers cannot avoid that obligation by

asking the New York court to resolve legal issues, either now or during appraisal.  By

retaining jurisdiction, this Court could have provided Insurers a future avenue to tee up

legal issues that, in Insurers' view, should be resolved during the appraisal process.

When Insurers declined this Court's invitation to retain jurisdiction, they chose to cut

off that avenue of possible relief from this Court's order. They are therefore bound to

comply with the September 11, 2024, order to submit to appraisal promptly and in good

faith. And they have failed to meet that obligation.

> **B.     Insurers are Ordered to Comply with this Court's Order Compelling
> Arbitration Promptly and in Good Faith**

The remaining question is what relief should follow from Insurers' violation of

the Court's September 11, 2024, order. BRE has requested two forms of relief: an order

requiring Insurers to proceed with appraisal promptly and in good faith, and sanctions

in the form of attorneys' fees.

1. As a first step, the Court ORDERS Insurers to comply with its order

compelling arbitration promptly and in good faith, consistent with BRE's request.

Insurers are further specifically ordered to submit to appraisal the issues that the Court

ruled are arbitrable in its September 11, 2024, order compelling arbitration. It is worth

repeating: Whatever happens in New York state court, it will not relieve Insurers of

their obligation to comply with this Court's order. Insurers remain welcome to raise

coverage issues to the appropriate court at a later date, should appraisal indeed tee up

additional legal questions. But Insurers already had a chance to argue that outstanding

coverage issues prevented the parties from first moving forward with appraisal, and

this Court squarely rejected those arguments. Insurers also already had a chance to

persuade this Court that the four disputed categories of losses raised coverage issues that precluded appraisal, and the Court likewise rejected that argument. Because Insurers did not seek reconsideration, a stay from this Court, or other appropriate relief, they must proceed with appraisal on the four disputed categories of losses.

At the hearing on BRE's motion, Insurers acknowledged—for the first time—that their course of action was ill-advised, and they agreed to set deadlines for the next steps of the appraisal process. Pursuant to the parties' agreement at oral argument, the Court sets the following deadlines: (1) within 15 days of this Court's ruling on this motion, the parties shall finalize an appraisal protocol; and (2) within 30 days of finalizing a protocol, the parties shall select an umpire. *See* ECF No. 67. The parties shall file status reports 15 days and 45 days from the Court's ruling on this motion. At the hearing, Insurers assured the Court that they do not expect that the parties will need to return for further oversight. If, however, the parties are unable to come to an agreement on either of these steps, the parties may seek resolution in this Court.

BRE's motion to enforce the Court's order compelling appraisal is, therefore, GRANTED to this extent.

2. That leave's BRE's request for sanctions in the form of attorneys' fees. Federal courts have "inherent contempt authority," *Int'l Union, Union Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994), under which they may award attorneys' fees to compensate the moving party when the other party fails to comply with a court order,

*Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). A district court may hold a party in civil contempt for "disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (cleaned up). While contempt need not be willful, a party should not be held in contempt based on a good faith and reasonable interpretation of a court's order. *In re Dual-Deck Video Cassette Recorder Antitrust Lit.*, 10 F.3d 693, 695 (9th Cir. 1993); *see also Perry*, 759 F.2d at 704-06.

The Court's September 11, 2024, directive to proceed to appraisal should have been eminently clear. That is especially true in light of discussions held during oral argument before this Court. *See, e.g.*, ECF No. 50, at PageID.1054 (Tr. of Oral Arg. Aug. 28, 2024) (argument by BRE's counsel that "it wouldn't make sense to . . . have the coverage issues go first here, because some of those coverage issues will be effectively mooted by the findings of the appraisal panel, and that's why it makes more sense for the appraisal panel to go first"). The oral arguments made clear that one of the questions before the Court was whether appraisal should await the resolution of any legal issues that might conceivably arise. And it should have been pellucidly clear to Insurers that in granting BRE's motion to compel the appraisal, the Court had concluded that the appraisal process should not wait.

The Court is mindful, however, that "contempt power, like other inherent powers of the judiciary, must be exercised with restraint and discretion." *Inst. of*

*Cetacean Rsch.*, 774 F.3d at 951 (internal quotation marks omitted).  As noted, Insurers took responsibility for their missteps at the hearing on BRE's motion.  They apologized for their letter in which they had refused to move forward with appraisal, and they assured the Court that they will proceed with appraisal as ordered.  Insurers, moreover, agreed to withdraw their motion to stay appraisal from the New York state court.  *See* ECF No. 67.  With that record, and to account for any past uncertainty about Insurers' obligations—doubtful as it may be that any could fairly have been said to exist—the Court declines to enter contempt sanctions against the Insurers at this time.  But Insurers cannot again claim to have any uncertainty about this:  Absent further order of this Court, the Ninth Circuit, or the Supreme Court, Insurers must submit to appraisal. And they must do so now, promptly and in good faith.

Should Insurers still not comply with this Court's order promptly and in good faith despite today's order reiterating their obligation to do so, BRE is invited to renew its motion.  If such a step becomes necessary, Insurers should expect to be sanctioned for wasting BRE's resources in having to move to compel compliance with this Court's orders.  At this time, however, the Court finds that an order compelling Insurers to proceed with arbitration promptly and in good faith—together with the agreed-upon firm deadlines for next steps—is sufficient, and it therefore DENIES without prejudice BRE's request for sanctions.

## <u>CONCLUSION</u>

For the foregoing reasons, Petitioners' Motion to Enforce Order Compelling

Arbitration and for Sanctions, ECF No. 60, is GRANTED IN PART AND DENIED IN

PART.

IT IS SO ORDERED.

DATED:  February 28, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 24-00159 MWJS-KJM; *BRE Hotels & Resorts LLC,* et al. *v. Ace American Insurance Company*, et al.; ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION TO ENFORCE ORDER COMPELLING ARBITRATION AND FOR SANCTIONS